THE UNITED STATES DISTRICT COURT
NORTER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR48 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KENNETH SHARP, | ) | |
| | ) | (Resolves Doc. 19) |
| Defendant. | ) | |

This matter comes before the Court on Defendant Kenneth Sharp's motion to suppress the evidence gathered against him. Doc. 19. The motion is DENIED.

On September 16, 2020, Cleveland Police Department Detective Brian Sabolik pulled over a Ford Excursion being driven by Sharp. Detective Sabolik initiated the traffic stop after running the Excursion's license plate and receiving information that the vehicle had been reported as stolen. At the time of the stop, Sharp was driving the vehicle and had three passengers with him. As Detective Sabolik approached the driver of the vehicle, he asked Sharp who owned the vehicle. Sharp responded that the vehicle belonged to his girlfriend, but that he frequently drove it. At that time, Sharp was handcuffed and placed in Detective Sabolik's police cruiser.

Detective Sabolik then returned to the vehicle and asked the passengers whether there was anything in the vehicle that should not be there. The front seat passenger then held up an open bottle of Patron tequila. Subsequently, as will be detailed below, Detective Sabolik

searched the vehicle and found two magazines of ammunition and a firearm. Sharp now contends that the search of the vehicle violated his Fourth Amendment rights. The Court now reviews his contentions.

"To protect against unreasonable searches and seizures, police officers are generally required to obtain a valid search warrant, rendering 'searches conducted outside the judicial process, without prior approval by judge or magistrate, per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Guy*, 1 Fed. App'x 410, 412 (6th Cir. 2001) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of these "well-delineated exceptions" is the automobile exception, which "allows the police to 'search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.'" *Id*. (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)). Critically, "[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that [the contraband] may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982).

> Initially, the Court notes that the Sixth Circuit has addressed a similar issue as follows:
>
> Here, Trooper Rule discovered that at least one passenger in the van had violated Kan. Stat. Ann. § 8–1599(b): there was an open container of alcohol in the van that was neither locked in the trunk nor "behind the last upright seat or in an area not normally occupied by the driver or a passenger." The troopers then had probable cause to search for any other similar contraband, i.e., any open containers of alcohol being transported in the vehicle in violation of state law. *See, e.g., United States v. McGuire*, 957 F.2d 310, 314 (7th Cir.1992) ("Once Trooper Newman discovered that McGuire was transporting open, alcoholic liquor in violation of Illinois law, ... he had probable cause to believe that the car contained additional contraband or evidence," which "gave Newman the authority to search every part of the vehicle and its contents that could conceal additional contraband.").

*United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008). Accordingly, Detective Sabolik arguably had probable cause to search the vehicle based solely on the passenger's admission that there was an open container in the vehicle.

However, Detective Sabolik did not rely solely on the open container to justify his search. After placing Sharp in his cruiser, Detective Sabolik returned to the vehicle to question the passengers. At that time, Detective Sabolik stated "I had observed a tray I know is commonly used to roll marijuana joints and blunts with some residue on the tray."[1] Detective Sabolik explained that he viewed the rolling tray by shining his flashlight through both the rear window and through the open driver's door. Following his observance of the rolling tray, Detective Sabolik then asked the passengers whether there was anything in the vehicle that should not be there. At around that same time, Detective Sabolik noted: "Because just when you saw me shining my flashlight down, I observed I believe it was three containers of what is used to hold marijuana that's usually given from the dispensaries[.] … There were three containers in the door." Moreover, prior to any search of the vehicle, Detective Sabolik asked the front seat passenger what the tray was used for, and the passenger responded that it was used to "roll weed." As a result of his observations and the passenger's comment, Detective Sabolik had probable cause to believe that additional drugs or drug paraphernalia would be located in the car. As such, his search of the vehicle was justified.

Sharp appears to take issue with the fact that Detective Sabolik erred in his written report and noted that all his seizures occurred pursuant to an inventory search. During his testimony, Detective Sabolik conceded that he had erred in his report. The Court notes that despite this error within the report, the evidence presented during the hearing supported a finding that

---

[1] Sharp makes much of the fact that portions of the body camera video suggest that Detective Sabolik was not familiar with the tray itself or its purpose. Even accepting that assertion as true, it is undisputed that the passenger informed Detective Sabolik of the tray's illicit purpose prior to any search being conducted.

3

Detective Sabolik would have been within his right to conduct a full inventory search of the vehicle.

Following Sharp's response that his girlfriend owned the vehicle, Detective Sabolik immediately asked dispatch to attempt to contact the owner. Despite Sharp's contention that his girlfriend was less than 30 seconds from the location of the vehicle, minutes passed without any word from the purported vehicle owner. As such, without word that the report of the vehicle being stolen had been called off, Detective Sabolik was within his rights to begin an inventory search to prepare for the vehicle to be towed. Sharp has offered no argument or case law to suggest that Detective Sabolik's courtesy efforts to locate the alleged owner somehow created a constitutional impediment to towing and inventorying the vehicle. Accordingly, Sharp's argument related to the error in Detective Sabolik's report does not further his argument to suppress the evidence seized from the vehicle.

Based upon the above, Sharp's motion to suppress is DENIED.

IT IS SO ORDERED.


August 2, 2021                                    */s/ Judge John R. Adams*
                                                                                           JUDGE JOHN R. ADAMS
                                                                                           UNITED STATES DISTRICT COURT